# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| John S Pappas, Plaintiff, ) | |
| ) | |
| v.  ) | Case No: 20-1200 |
| ) | |
| City of Peoria, a municipal corporation, Jimax, a ) | |
| Corporation, Patrick Urich, Melodi D. Green, Jerald ) | |
| McKean, Anthony Rummans, Anthony Allen, ) | |
| Spencer Dugan, Martha Jan Hammer, Brian Terry, ) | |
| Denise Moore, Ashley Elias, Leah Allison, Taylor ) | JURY TRIAL REQUESTED |
| Stanton, Joe Dulin, Mr Towit's Wrecker Service, ) | |
| Ross Black, each in his or her individual capacity, ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff, John S. Pappas, by and through his attorney, Carl F. Reardon, and for his Complaint against the Defendants, states as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and over his state law claims pursuant to 28 U.S.C. § 1337(a) because they arise from the same set of operative facts that give rise to this Court's federal question jurisdiction over his other claims.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because all of the events or omissions giving rise to Plaintiff's claims occurred within this district and because all defendants reside within this district.

### PARTIES

3. Plaintiff, John S Pappas ("Pappas"), is a 46-year-old male who resides in Peoria, Illinois.

4. Defendant, City of Peoria, ("City") is a home-rule municipality incorporated and organized under the laws of the State of Illinois. The City operates with an appointed city manager and is governed by an elected Mayor and ten elected City Council members (the "City Council").

5. At all times relevant to the allegations of this complaint, the City was an employer as defined by Title VII, 42 U.S.C. § 2000e(b).

6. On information and belief, at all times relevant to the allegations of this complaint, the City employed more than 500 employees for purposes of the limitations set forth in 42 U.S.C. § 1981a(b)(3)(B).

7. Defendant, Patrick Urich ("Urich"), is and was at all times relevant to the allegations of this complaint, the appointed City Manager. With regard to the allegations of this complaint, Urich was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by the Code of Ordinances of the City, and by the Mayor and City Council.

8. Defendant, Spencer Dugan ("Dugan") is and was at all times relevant to the allegations of this complaint, a duly appointed Code Enforcement Inspector with the City of Peoria Community Development Department. With regard to the allegations of this complaint, Dugan was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by his superiors and by the Code of Ordinances of the City.

9. Defendant, Detective Brian Terry ("Terry") is and was at all times relevant to the allegations of this complaint, a duly appointed Auto Theft Investigator in the Criminal Investigations Division with the City of Peoria Police Department. With regard to the

allegations of this complaint, Terry was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by the Code of Ordinances of the City and by the Superintendent of Police.

10. Defendant, Jerald McKean ("McKean") is and was at all times relevant to the allegations of this complaint, a duly appointed Sergeant in the Uniformed Operations Division Patrol Unit with the City of Peoria Police Department. With regard to the allegations of this complaint, McKean was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by the Code of Ordinances of the City and by the Superintendent of Police.

11. Defendant, Anthony Rummans ("Rummans") is and was at all times relevant to the allegations of this complaint, a duly appointed Sergeant with the City of Peoria Police Department.for the City of Peoria. With regard to the allegations of this complaint, Williams was, at all times, acting under color of state law by virtue of her employment with the City and the authority delegated to him by the Code of Ordinances of the City and by the authority delegated to him by his superiors.

12. Defendant, Denise Moore ("Moore") is and was at all times relevant to the allegations of this complaint, the duly elected City Council member for District 1. With regard to the allegations of this complaint, Moore was, at all times, acting under color of state law by virtue of her status as a Council Member with the City and the authority delegated to her by the Code of Ordinances of the City.

13. Defendant, Jimax, ("Jimax") is and was at all times relevant to the allegations of this complaint, a corporation that provided services to the City.

14. Defendant, Ashley Elias ("Elias") is and was at all times relevant to the allegations of this complaint, a duly appointed Code Enforcement Supervisor of the City. With regard to the allegations of this complaint, Elias was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by his superiors and by the Code of Ordinances of the City.

15. Defendant, Leah Allison ("Allison") is and was at all times relevant to the allegations of this complaint, a duly appointed Senior Urban Planner of the City. With regard to the allegations of this complaint, Allison was, at all times, acting under color of state law by virtue of her employment with the City and the authority delegated to her by her superiors and by the Code of Ordinances of the City.

16. Defendant, Taylor Stanton ("Stanton"), was a tow truck driver, not employed by the City.

17. Defendant, Joe Dulin ("Dulin"), Assistant Director, Community Development Department, is and was at all times relevant to the allegations of this complaint a duly appointed employee of the City. With regard to the allegations of this complaint, Dulin was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by his superiors and by the Code of Ordinances of the City.

18. Defendant, Anthony Allen ("Allen"), Nuisance Abatement Officer, Neighborhood Services Unit, Peoria Police Department, is and was at all times relevant to the allegations of this complaint, a duly appointed employee of the City. With regard to the allegations of this complaint, Allen was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by his superiors and the Code of Ordinances of the City.

19. Defendant, Mr Towit's Wrecker Service ("Towit's), is a towing company used by the City to tow vehicles.

20. Defendant, Melodi D. Green (Green") is an Assistant City Attorney, an attorney in the City's Legal Department. With regard to the allegations of this complaint, Green was, at all times, acting under color of state law by virtue of her employment with the City and the authority delegated to her by her superiors and the Code of Ordinances of the City.

21. Ross Black, Community Development Director, is and was at all times relevant to the allegations of this complaint, a duly appointed Community Development Director with the City of Peoria Community Development Department. With regard to the allegations of this complaint, Black was, at all times, acting under color of state law by virtue of his employment with the City and the authority delegated to him by his superiors and by the Code of Ordinances of the City.

## FACTS

### General Facts

22. June 1, 2017: Plaintiff purchased the property at 1025 NE Adams Street, Peoria, Illinois 61603.

23. June 27, 2017: Notice of Violation was served on Plaintiff by the City.

24. July 25, 2017: Hearing on Notice of Violation was held.

25. August 8, 2017: Case Continued to August 8, 2017 to review if zoning processes have begun and status.

26. Right after court on August 8, 2017, Plaintiff proceeded to Planning and Development and spoke to someone named Josh.

27. Josh proceeded to explain the mechanics of the rezoning process and finished it off by telling Plaintiff that he will probably not get the zoning Plaintiff is seeking.

28. When Plaintiff asked why not, no clear answer was given.

29. July 2017 – September 2017

    a. Several court dates held about inoperable unregistered vehicles in plain view.

    b. During first court date Plaintiff met Defendant Dugan, Code Enforcement Officer, and Plaintiff was told that the ordinance stated that he couldn't have vehicles on grass and Plaintiff was given a map of the areas that were paved on property and allowed to store.

    c. Plaintiff purchased and installed slats for chain linked fence to remedy plain view aspect of violation.

    d. Plaintiff was given a follow up court date and was instructed to get ahold of Defendant Dugan if the changes were made prior to court date.

    e. Plaintiff moved all vehicles to instructed areas and contacted Defendant Dugan. Plaintiff was told it was too close to court date and Plaintiff had to show up.

    f. On that court date Plaintiff was told that simply moving vehicles and putting up slats didn't satisfy ordinance due to not having proper zoning.

    g. Plaintiff was told to start the re-zoning process.

30. October 2017:  Dugan requested a meeting at the property which Plaintiff agreed to.

    a. At this meeting Plaintiff met Ashley Elias and Leah Allison.

    b. Ms. Allison led this meeting by telling Plaintiff that he most likely wouldn't receive rezoning because Habitat for Humanity was building houses in the area.

    c. When Plaintiff asked where, she told him on Madison.

    d. When Plaintiff mentioned that's two blocks away, she brushed it off and proceeded to tell Plaintiff to either to apply for rezoning or find alternate accommodations for vehicles.

    e. Plaintiff also mentioned that Councilwoman Moore hadn't retuned his calls.

31. November 2017 – January 2018

    a. There were constant phone calls and back and forth with Allison about the process and trying to get a clearer picture as to how Plaintiff can work with the City to make all parties involved happy.

32. January 31, 2018:  Notice of Violation was served on Plaintiff.

33. February 20, 2018: Hearing:  Judge found Plaintiff guilty and fined him.

34. February 23, 2018:  First search warrant was served and 39 vehicles were stickered.

35. March 2018:  Plaintiff turned in his rezoning application and payment.

36. April 5, 2018: Planning Commission voted to deny Plaintiff's rezoning request.

37. 4/24/2018: City Council voted to deny zoning Plaintiff's rezoning request.

38. May 7,2018 Peoria had a meeting every Monday afternoon called- the "One Stop Shop".

    a. It was an opportunity for citizens to voice their concerns and ask questions to multiple department representatives at the same time.  Planner Josh was there.

    b. A zoning department representative was present and she received the majority of Plaintiff's focus to make sure there weren't any ordinance issues that could surprise him upon the purchase of the Troth property.

39. May 8, 2018:  Plaintiff called Defendant Allison to inform her of his intent to close on the Troth property and Plaintiff would need approximately a month to move there.

40. Allison said zoning would back off, but Plaintiff would need to convince code enforcement.

41. Plaintiff called Defendant Dugan. Dugan said he would talk to his supervisor and call Plaintiff back.

42. In Dugan's next call to Plaintiff, he said his supervisor wanted the vehicles out by Thursday. Which Thursday? It was Tuesday. Plaintiff said it was impossible.

43. Dugan recommended Plaintiff speak to his supervisor.

44. Dugan connected Plaintiff and the call went straight to voicemail. Plaintiff left a lengthy voicemail relaying all the information and offering documentation and asking him to call Plaintiff back.

45. Plaintiff called Dugan's supervisor one other time. No one ever called Plaintiff back or sent him a notice of their decision.

46. On 5/18/2020 Plaintiff signed contract to purchase Troth Street property for $100,000.
    a. Troth was a property a mile up the road with the proper zoning, over twice the size, and a towing company had already been running a business there.
    b. Earnest money was given.
    c. Contracts were drawn with a tentative closing date.
    d. An attorney was retained.
    e. Plaintiff closed on the Troth property on June 8, 2018.

47. On 5/18/2018:  Complaint for Administrative Search Warrant was filed by City in Case No: 18-MR-00268 with:
    a. Affidavit attached executed by Defendant Dugan dated 5/15/2018.
    b. 5/21/2018 Administrative Search Warrant was issued.

48. On May 23, 2018 Officer Anthony Allen, a Police Cadet, Jimax, and Spencer Dugan, a Code Enforcement Inspector with the Community Development Department, arrived at 1025 N.E. Adams Street, Peoria, Illinois 61603-4001 "the property" around 8:50a.m..

49. Dugan provided a copy of the search warrant to Officer Allen, kept a copy on himself, and kept the original in his car.

50. Jimax then cut the lock at the property.

51. Officer Allen and a Cadet began gathering VINs on the vehicles and logging any major items inside.

52. While they were doing that, Dugan was determining which vehicles could be towed.

53. All but 3 new vehicles and a small tow truck were determined by Dugan to be ready for tow.

54. Around 9:00am, Officer Allen began requesting tow trucks to the property and coordinating which of Plaintiff's vehicles each tow truck company would take.

55. While Officer Allen was doing this, Dugan tagged each of the 3 new vehicles that were the property for future removal if required.

56. After removing 3 vehicles from the property, it was discovered that one of Plaintiff's tow trucks (which was tagged for tow) actually ran and had the keys in it.

57. A tow truck driver from Mr. Towit's got inside and drove it to the alley behind the property to hook it up for removal from the property.

58. Shortly after, around 9;25am, Plaintiff emerged from his home on the property wearing only flip flops and sleeping pants.

59. Officer Allen provided Plaintiff the search warrant copy he had on hand and Plaintiff began yelling that "he had no warning for this ... that this was his livelihood."

60. Plaintiff did this while frantically running around the lot before running to the alleyway with Officer Allen in pursuit.

61. It was in the alleyway that Plaintiff and employees of Mr. Towit's got into a physical altercation as Plaintiff attempted to force his way into his tow truck;

62. During the altercation a tow truck employee was hit in the face and neck.

63. The altercation ended with Plaintiff being tased by Officer Allen.

64. Several officers and police supervisors showed up to manage the scene while waiting for the fire department to arrive to remove the barbs and the police van to bring Plaintiff to the County Jail.

65. Sargent Rummins took Dugan's statement on the background of his interaction with Plaintiff in the past.

66. Once Plaintiff was gone, Officer Allen, Officer Hightower, and the Police Cadet stayed behind and continued to tow.

67. The rest of their time there was uneventful.

68. In total 3 vehicles were tagged and 21 vehicles were towed.

69. May 23, 2018 (Wednesday)

    a. It was a warm day, Plaintiff's window was open; as a second shifter that was Plaintiff's prime time to sleep.

    b. Plaintiff was violently woken by the high-pitched sounds of trucks' back-up alarms and peoples voices that sounded like they were in his room.

    c. Plaintiff looked out the window and it took his brain a moment to comprehend what was happening. There was a fleet of tow trucks hooking up and taking his vehicles.

d.  Plaintiff jumped out of bed tossed on a pair of work pants and flip flops and stumbled out of the house. No shirt, no belt not even underwear.

e.  Plaintiff approached the uniformed officer who seemed to be coordinating this assault. "I don't understand Plaintiff said," I told code enforcement my intentions". Yelling, probably tearing up, as Plaintiff watched almost 15 years of his efforts ripped out of his arms.

f.  Then Plaintiff saw Defendant Dugan, Plaintiff said "tell them, we talked about this!" Dugan put up his hands, turned his back and walked away.

g.  The police officer handed Plaintiff a piece of paper and in a heartless, almost mocking, tone said "it is what it is".

h.  At that moment Plaintiff noticed one of his tow trucks in the alley. The same tow truck that his girl friend and Plaintiff helped resuscitate just a week prior after years of being in a mechanical coma.

i.  It wasn't hooked up to a tow truck, the driver had just backed up to it. Plaintiff pleaded with him, let me just keep this one, just this one!

j.  A harsh "no", maybe another "it is what it is". The door to it was open, the keys Plaintiff knew were in the ignition, Plaintiff left them there that last evening , Plaintiff jumped in and started it.

k.  By that time Defendant Stanton, the tow truck driver, had jumped in on the passenger side. He grabbed Plaintiff's arm as Plaintiff was putting into gear. Plaintiff pulled away and put it into drive. His arm pulling continued joined by two more drivers pulling on Plaintiff's left arm.

    l.   He had successfully put it in park but Plaintiff pulled his arms back and put it in gear again. At this point Defendant Stanton told the others to get the cop. This trip was short, a few feet later he had put the truck in park .

    m.  Plaintiff was done, exhausted as he felt an electric current course through his body at the same time Plaintiff's ears were receiving a message, "taser taser"! Plaintiff fell out of the truck onto his chest.

    n.   The police officer jumped on Plaintiff's back with his knee first, violently jerking Plaintiff's arms behind him, and cuffed him.

    o.   The police officer's knee eased its pressure and Plaintiff got on his knees.

    p.   "Stay down or I'll taser you again", he screamed.

## COUNT I

### § 1983 Procedural Due Process Claim

70. Plaintiff incorporates and realleges paragraphs 1 – 69 as though fully set forth and alleged herein.

71. The Defendants in this count are all of those identified in Paragraphs 4 thru 21 stated above.

73. Plaintiff had a cognizable property interest in his vehicles that were towed from his property by the defendants.

74. By towing his vehicles away from his property, Plaintiff has been deprived these property interests without due process in violation of the Fourteenth Amendment to the United States Constitution.

75. Despite failing or refusing to afford Plaintiff his due process rights, the removal of his vehicles has been ratified by the City's final policy makers, namely, the mayor and the city council.

76. The search was conducted outside the judicial process.

77. The warrant did not authorize anything to be seized. "No Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

78. The affidavit did not describe anything to be seized. Officers must describe in an affidavit in particularity the place they will search and the items they will seize.

79. A warrant that lacks accurate information as to what will be searched is improper, and that a search which happens pursuant to that warrant is unlawful and violates the Fourth Amendment.

80. Plaintiff's residence is located at the property being search. Law enforcement officers executing a search warrant may not immediately force their way into a property. Instead, they must first knock and announce their identity and intent. Then, they must wait a reasonable amount of time to allow an occupant to open the door. Only after waiting may the police force entry. This "knock-and-announce rule" is one of the factors a court must consider in its reasonableness test. Defendants did not abide by the "knock-and-announce rule"

81. Defendants failed to knock. A no-knock entry is justified when, under the circumstances, knocking and announcing their presence "would be dangerous or futile, or that it would inhibit the effective investigation of the crime." The situation is this case was not "dangerous or futile".

82. The Defendants used excessive force against the Plaintiff. All searches and seizures under Fourth Amendment must be reasonable. No excessive force shall be used. Reasonableness is the ultimate measure of the constitutionality of a search or seizure. Searches and seizures with the warrant must also satisfy the reasonableness requirement.

83. The City's Ordinance is unconstitutional. It purports to authorize **removal** of vehicles from private property without a warrant.

84. Plaintiff was incarcerated in the Peoria County Jail on May 23, 2018.

85. Defendants finally caused a charge to be instituted against Plaintiff more than a month later (on June 25, 2018) for "Battery".

86. Plaintiff was required to hire an attorney at great expense to represent him.

87. Plaintiff and his attorney were required to appear in court on multiple occasions.

88. There was no probable cause for such charge.

89. The charge of battery against the plaintiff was finally dismissed in the Circuit Court of Peoria County more than seven months later (on January 29, 2019)

    WHEREFORE, Plaintiff asks that this Honorable Court:

a)    Enter judgment against Defendants,

b)    Order the vehicles that were towed be returned to Plaintiff.

b)    Award Plaintiff compensatory and punitive damages,

c)    Award attorney' fees and costs, and

d)    Award any further relief that this Honorable Court deems just and equitable.

PLAINTIFF REQUESTS TRIAL BY JURY

**COUNT II**

**(42 U.S.C. § 1983) CIVIL CONSPIRACY**

90. This is a claim for damages resulting from a civil conspiracy to deprive Plaintiff of his vehicles.

91. Plaintiff realleges paragraphs 1 through 69 as if fully set forth herein.

92. The Defendants in this count are all of those identified in Paragraphs 4 thru 21 stated above.

93. These defendants were intimately involved with one another in various aspects of causing Plaintiff's vehicles to be wrongfully removed from his property.

94. These defendants were intimately involved with one another in various aspects of causing Plaintiff to be wrongfully and maliciously prosecuted with battery.

95. There was a concerted effort and understanding among and between them to work together to deprive Plaintiff of his constitutional rights.

96. There were one or more agreements between two or more of the defendants who knowingly and voluntarily participated in one or more of the following unlawful acts of willful or wanton misconduct in furtherance of the agreement:

    a. 5/18/2018: Complaint for Administrative Search Warrant was filed in Case No: 18-MR-00268

    b. with Affidavit attached executed by Defendant Dugan dated 5/15/2018;

    c. On 5/21/2018 Administrative Search Warrant was issued.

97. . Injuries were caused by unlawful overt acts performed by one or more of the defendants that deprived, denied, interfered with, and damaged Plaintiffs' property interest:

83. As a result of one or more unlawful overt acts, the Plaintiff was injured and damaged as a result of the loss he sustained by having his property seized and removed.

WHEREFORE, Plaintiff asks that this Honorable Court:

    a) Enter judgment against Defendants,

    b) Award Plaintiff compensatory and punitive damages,

    c) Award attorney' fees and costs, and

    d) Award any further relief that this Honorable Court deems just and equitable.

PLAINTIFF REQUESTS TRIAL BY JURY

## COUNT III

## MALICIOUS PROSECUTION

98. Plaintiff realleges paragraphs 1 - 69 as if fully set forth herein.

99. The Defendants in this count are all of those identified in Paragraphs 4 thru 21 stated above.

100. Plaintiff was incarcerated in the Peoria County Jail for battery on May 23, 2018.

101. Defendants finally caused a charge to be instituted against Plaintiff on June 25, 2018 (more than 30 days later) for "Battery".

102. Plaintiff was required to hire an attorney at great expense to represent him.

103. Plaintiff and his attorney were required to appear in court on multiple occasions.

104. There was no probable cause for such charge.

105. The charge of battery against the plaintiff was dismissed in the Circuit Court of Peoria County on January 29, 2019 because Defendant Stanton, the witness for the People, failed to appear.

Wherefore, Plaintiff asks that this Honorable Court:

    a) Enter judgment against the Defendants;

    b) Award Plaintiff compensatory and punitive damages;

    c) Award costs; and

d) Award any further relief as this Honorable Court deems just and equitable.

PLAINTIFF REQUESTS TRIAL BY JURY

## COUNT IV

**(Indemnification Claim pursuant to 745 ILCS 10/9-102)**

106. The acts of the Defendants described in the above claims were willful and wanton, and committed in the scope of employment.

107. Pursuant to the Illinois Tort Immunity Act, 745 ILCS 10/9-102, Defendant City of Peoria, is liable for any judgments for compensatory damages in this case arising from the Defendants' actions.

WHEREFORE, Plaintiff asks that this Honorable Court order Defendant, City of Peoria, to indemnify the Defendants for any judgment for compensatory damages in this case arising from their actions.

PLAINTIFF REQUESTS TRIAL BY JURY

Respectfully submitted:

John S Pappas
By: s/Carl F. Reardon
His attorney

Carl F. Reardon (ARDC No. 2295725)
Attorney at Law
120 Illini Drive
East Peoria, Illinois 61611
309-699-6767
309-699-6774 (fax)
carlreardon@comcast.net